Patricia REYNOLDS,
Defendant–Appellant,

v.

STATE of Indiana, Plaintiff–Appellee.

No. 64A03–9007–CR–274.

Court of Appeals of Indiana,
Third District.

April 9, 1991.

John E. Martin, Law Offices of James V. Tsoutsouris, Valparaiso, for defendant-appellant.

Linley E. Pearson, Atty. Gen., Michael Gene Worden, Deputy Atty. Gen., Indianapolis, for plaintiff-appellee.

GARRARD, Judge.

### Facts and Procedural History

Patricia Reynolds (Reynolds) was tried before a jury and convicted of cruelty to an animal, a class B misdemeanor. Reynolds is appealing that conviction on two grounds. First, she contends that the evidence was not sufficient to sustain the conviction. Second, she contends that she was denied a fair trial because the trial court denied her motion in limine regarding a prior conviction for cruelty to an animal and thereby denied her the opportunity to testify on her own behalf.

The facts most favorable to the verdict show that Reynolds was the sole caretaker of all the animals involved in this action. On June 22, 1989 a police officer, two welfare workers, two animal control officers, and an employee from the Department of Natural Resources entered the house where Reynolds kept the animals. They were allowed entry to the house by Reynolds' husband. After observing the conditions in which the animals were kept, the animal control officers removed all of the animals which the Porter County Animal Shelter (Shelter) could accommodate and took them to the Shelter.

According to the testimony of these witnesses, there were a large number of animals confined in the house and in some type of shed adjacent to the house. The temperature inside the house was approximately ninety degrees, at least fifteen degrees above a healthy temperature for most of the animals. The house smelled strongly of animal feces and urine. Located in the house were eleven dogs, one parrot, two tarantulas, two fox, and at least one snake. All of the dogs were confined in cages except one which was running loose.

Several of the dogs were in cages which were too small to humanely confine the dogs, especially if they were not taken out of the cages on a regular basis for elimination, exercise, and human contact. Water was present in only one cage and that water was "muddy" and contained feces. None of the cages had food in them. Several of the cages were not properly cleaned. The dogs were thin and in need of grooming, with dried feces in their coats. Finally, when the animal control officers took the animals to the Shelter, the dogs cowered away from human contact as if they were frightened.

In the shed adjacent to the house there were two rabbits in cages and seven cats running loose. The shed was even hotter than the house and also smelled strongly of animal feces and urine. The rabbits appeared to be kept in adequate cages, but had no water or food available to them. The cats, however, were not provided an adequate means for elimination. If there was a litter box in the shed it had not been

cleaned for a substantial length of time and was therefore not used by the cats. This is supported by the fact that the cats had urinated on some chairs in the shed and defecated on the floor. The cats also appeared frightened and tried to avoid human contact when the animal control officers took them to the Shelter.

None of the animals had been properly inoculated. A neighbor from across the street had never seen the animals outside except for a few times when it appeared that an animal had accidentally slipped out the door.

Based upon these facts the jury found Reynolds guilty of cruelty to an animal under IC 35–46–3–7. The statute provides as follows:

> A person having a vertebrate animal in the person's custody who recklessly, knowingly, or intentionally abandons or neglects the animal commits cruelty to an animal, a Class B misdemeanor.

IC 35–46–3–7.

Prior to trial Reynolds filed a motion in limine to prohibit the prosecution from introducing evidence or asking questions about her prior conviction for cruelty to an animal. The trial court denied Reynolds' motion in limine on the morning of the trial.

### Discussion and Decision

Sufficiency of the Evidence

■ Reynolds contends that the evidence presented at trial was not sufficient to prove that she neglected the animals which she admittedly had in her custody and asks us to review that evidence. The standard of review which the Indiana Court of Appeals must use is well established. We are to review the evidence most favorable to the verdict, along with all reasonable inferences which may be drawn from that evidence. If there is substantial evidence of probative value to support the verdict we are to affirm the verdict. *Clark v. State* (1990), Ind., 562 N.E.2d 11, 16; *Mitchell v. State* (1989), Ind., 541 N.E.2d 265, 267; *Adams v. State* (1989), Ind.App., 542 N.E.2d 1362.

There is substantial evidence of probative value to support the verdict. The jury could properly find from the evidence presented at trial and reasonable inferences drawn from that evidence that Reynolds did neglect the animals in her custody in the following manner.

All the animals were kept in an inhumanely hot environment with no attempt to provide them with relief. The animals were not properly inoculated. The dogs were inappropriately confined in cages which were too small without adequate food or water or adequate opportunity for elimination. Similarly, the cats were confined in a shed without an adequate means for elimination.

The jury could reasonably infer from the thin appearance of the animals that they were not adequately fed. From the behavior of the dogs and cats around the animal control officers the jury could reasonably infer that the animals were frightened because they were not taken out of their cages or the shed for elimination, exercise and human interaction on a regular basis. Finally, the jury could reasonably infer that Reynolds, as the sole caretaker for these animals, was responsible for the conditions the animals were found in on June 22, 1989.[1]

As Reynolds points out, the evidence in this case is not as extensive or as clear as the evidence in *Biggerstaff v. State* (1982),

---

1. Reynolds asks the jury to believe that her husband placed some of the dogs in inappropriate cages after she left the house in order to "frame" her. The only evidence to support this theory was the testimony of defense witness Harris that when she came to the door she observed two dogs running loose rather than only one. Reynolds' husband denied placing any of the dogs in cages.

 First, the jury is free to disbelieve this theory of events. Second, even if the jury did believe that her husband placed some of the dogs in inappropriate cages, the jury still had enough other evidence upon which to base its finding that Reynolds neglected the animals. The jury could still find Reynolds guilty of neglect based upon the unsanitary condition of the cages, the lack of available water on such an extremely hot day, the thinness of the animals, or their apparent fear of human contact.

Ind.App., 435 N.E.2d 621, a case involving a conviction for cruelty to an animal decided under an earlier version of this statute. However, it is sufficient to require us to sustain the verdict. To do otherwise would require us to reweigh evidence and judge witness credibility, two functions which belong to the jury, not the appellate court.

Denial of Motion in Limine

The second contention Reynolds makes is that the trial court erred in denying her motion in limine regarding her prior conviction for cruelty to an animal. She then contends that she did not testify because she was afraid that the prosecution would attempt to impeach her with evidence of the past conviction and that she was thereby denied a fair trial.

 Even Reynolds acknowledges in her brief that the law on this point is settled in Indiana. A ruling on a motion in limine is not a final ruling and is therefore not reviewable on appeal. *Phillips v. State* (1990), Ind., 550 N.E.2d 1290, 1296. In *Bowen v. State* (1985), Ind., 478 N.E.2d 44 the Indiana Supreme Court stated that the proper procedure for a party in such a situation is for the party to take the witness stand and object when and if the prosecution attempts to extract evidence of the prior conviction. Harmful error occurs, if at all, only when the evidence is offered at trial. *Phillips, supra,* at 1296. Even then a proper objection is necessary in order to preserve the error for appeal. *Hoback v. State* (1988), Ind.App., 525 N.E.2d 1257, 1260.

██ Reynolds has no appealable issue. The trial court's ruling on her motion in limine is not appealable. Reynolds' decision not to testify was a tactical decision on her part and provides no basis for appeal. *See Bowen, supra* at 46. It is not necessary for us to discuss the admissibility of evidence regarding Reynolds' past conviction for cruelty to an animal because the prosecution did not attempt to introduce any evidence in that regard.[2] Thus, there is no appealable error for us to review.

For the reasons discussed above, we affirm the verdict.

STATON and BARTEAU, JJ., concur.

---

2. The reference by Reynolds' husband to "our prior involvement with welfare...." in response to the prosecution's question about why the animals were covered up and hidden, did not mention the conviction and was not objected to by Reynolds.