TREANTS ENTERPRISES, INC. v. ONSLOW COUNTY, THE SHERIFF OF ONSLOW COUNTY IN HIS OFFICIAL CAPACITY; AND THE ONSLOW COUNTY TAX COLLECTOR IN HIS OFFICIAL CAPACITY

No. 884SC739

(Filed 5 July 1989)

**1. Constitutional Law § 18— regulation of escort businesses— overbroad**

An ordinance regulating escort bureaus was void for overbreadth where the ordinance required escort bureaus to keep a record of transactions with clients or customers; the record

book was required to be kept on the premises and made available for inspection by the sheriff of the county or one of his deputies; and information concerning the customers or clients and the escorts was required to be recorded, including the names and addresses of each party involved in a transaction. The county established that it had a compelling interest in preventing the use of escorts for pandering and prostitution, the protection of minors and the furtherance of public health, safety and welfare, but the county failed to show that the means employed were drawn so as not to infringe on the associational freedoms of persons who may seek the services of an escort.

2. **Constitutional Law § 18— regulation of escort businesses— void for vagueness**

   An ordinance regulating escort bureaus was void for vagueness and therefore violative of due process of law in that the term "escort," while susceptible to the apparent intended meaning of the ordinance, was also susceptible of other connotations. In modern society the term "escort" as defined by the ordinance could include, for example, dance instructors, golf and tennis professionals, personal or social secretaries, and chauffeurs.

3. **Constitutional Law § 14— regulation of escort bureaus— violation of law of the land**

   An ordinance regulating escort bureaus violated Art. I, § 19 of the North Carolina Constitution where, although the county had established that it had a legitimate objective in promulgating the ordinance in the present case, the means chosen by the county were not reasonable in light of their effect on rights of association guaranteed by the First Amendment.

APPEAL by plaintiff from *Johnson, E. Lynn, Judge*. Judgment entered 19 April 1988 in JONES County Superior Court. Heard in the Court of Appeals 15 February 1989.

Plaintiff is a corporation organized and existing under the laws of the State of North Carolina. Plaintiff operates the following three business establishments in defendant Onslow County: Adult World, Man's World, and Video World, all of which are located in the City of Jacksonville, North Carolina. Each of these businesses exhibits and rents motion pictures and video tapes and sells books

and magazines. These businesses also offer a service whereby, upon the payment of a fee, a customer can have a person watch a movie with him on the premises of the establishments.

On 4 January 1988, the Onslow County Board of Commissioners enacted an ordinance entitled, "An Ordinance Regulating Escort Bureaus." This ordinance was to become effective on 1 March 1988.

## The Ordinance

The ordinance provides that in order to operate an escort bureau a corporation must apply for and receive a license from the Onslow County Tax Collector. A fee of $25.00 is imposed for this license. Before the license can be issued, the applicant must have a "certificate of compliance" from the Sheriff of Onslow County for each escort who is employed by the applicant. In order to obtain or maintain a license every corporation operating as an escort bureau is responsible for making sure that every employee who is an escort is registered by name and address with the Onslow County Sheriff's Department within five days after being employed. Once this is accomplished the escort is issued a certificate of compliance. "Escort" is defined as:

(1) Any person who, for hire or reward, accompanies others to or about social affairs, entertainment or places of amusement.

(2) Any person who, for hire or reward, consorts with others for purposes of socializing and/or amusement and/or entertainment about any place of public resort or within any private quarters.

An "escort bureau" is defined as: "any business or agency which, for a fee, commission, hire, reward or profit, furnishes or offers to furnish escorts." Massage parlors and related businesses are expressly excluded from the ordinance due to being regulated by another county ordinance.

An applicant for a license to operate an escort bureau is required to furnish to the Onslow County Sheriff's Department his full name, address, physical description, age, driver's license number and social security number so as to assist in an investigation of the applicant's criminal record and character. A fee of $25.00 is charged for each escort employee for whom an application for a certificate of compliance is made. A $25.00 fee is also charged for each applicant who is required to be investigated. Applicants

can be denied a license if persons who are required to be investigated under the ordinance have been convicted of a felony or of a crime involving prostitution, assignation or a related offense in the five years immediately preceding the date of the license application. Licenses can be revoked if any persons required to be investigated under the ordinance are convicted of the above criminal offenses. The ordinance also prohibits employment of new escort employees who have been convicted of a felony, prostitution, assignation or a related offense within a specific time period. Violations of this prohibition constitute grounds for revocation of the license issued to the escort bureau. Continued employment of existing employees as escorts hired prior to or after the effective date of the ordinance who are convicted of the offenses mentioned above in regard to an offense occurring subsequent to the effective date of the ordinance or whose initial employment is known by the licensee to have violated the ordinance is prohibited and a violation of this prohibition is grounds for immediate revocation of the escort bureau's license.

The ordinance also requires escort bureaus to keep a record of client or customer transactions for a period of one year beyond the date of the transaction. The information which is required to be recorded is as follows:

(1) an accounting of the name, address and age of the patron, customer or client or person involved with the transaction and the date of the transaction.

(2) the name and address of each escort employed, furnished or arranged for.

The record book is required to be kept "at all times on the premises of the escort bureau" and "shall be made available for inspection during regular business hours only to the Sheriff of Onslow County or one of his sworn deputies." The ordinance also contains provisions establishing security measures for protecting and destroying information obtained from the record books of the escort bureau.

The ordinance also prohibits transactions with and employment of juveniles. The ordinance further provides for penalties for violation of the ordinance and for the severability of the various provisions of the ordinance should a given provision be found to be invalid or unconstitutional.

## TREANTS ENTERPRISES, INC. v. ONSLOW COUNTY

[94 N.C. App. 453 (1989)]

On 16 February 1988 plaintiff filed a complaint alleging that the ordinance was "illegal, invalid and unconstitutional under the General Statutes and Constitution of North Carolina and the Constitution of the United States . . . ." The plaintiff further alleged that the ordinance was unconstitutional because it "is overly broad and vague, infringes upon the freedoms of speech and press, imposes a tax not authorized by state law, impermissibly invades the privacy of the plaintiff's employees and customers . . . [purports] to regulate an area that has been pre-empted by state law. . . ." The plaintiff sought a preliminary injunction and a permanent injunction of the enforcement of the ordinance and a judgment declaring the ordinance to be unconstitutional, illegal and invalid. Plaintiff made a motion for a preliminary injunction on 16 February 1988 which was later stipulated to be treated as a motion for permanent injunction by the parties. Defendants answered on 14 April 1988 generally denying the averments of plaintiff's complaint and asserting that plaintiff had no standing to litigate its claims on behalf of its customers. Defendants requested that plaintiff's complaint be dismissed or that the court find that the ordinance was valid and a denial of the relief sought by plaintiff. The matter came on for hearing at the 28 March 1988 mixed session of Jones County Superior Court. On 19 April 1988 the trial court entered an order denying plaintiff's motion for a permanent injunction and dismissing plaintiff's complaint. Plaintiff appealed from this order.

*Robert T. Hargett and Jeffrey S. Miller for plaintiff-appellant.*

*Roger A. Moore for defendant-appellees.*

WELLS, Judge.

Plaintiff assigns error to the trial court's conclusion that the ordinance at issue in the present case is not vague or overly broad and not in violation of the Fourteenth Amendment of the United States Constitution and Article 1, Section 19 of the North Carolina Constitution.

[1] Plaintiff contends that the ordinance is vague and overbroad, violating both the federal and state constitutions. The doctrines of vagueness and overbreadth are primarily concerned with rights and privileges protected by the federal constitution. In defining the vagueness doctrine the Supreme Court of the United States has stated: "[A] statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must

necessarily guess at its meaning and differ as to its application violates the first essential of due process of law." *Connally v. General Construction Co.*, 269 U.S. 385, 46 S.Ct. 126, 70 L.Ed. 322 (1926); *Coates v. Cincinnati*, 402 U.S. 611, 91 S.Ct. 1686, 29 L.Ed. 2d 214 (1971). " 'It is a basic principle of due process that an enactment is void for vagueness if its *prohibitions* are not clearly defined.' " *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 102 S.Ct. 1070, 71 L.Ed. 2d 152 (1982) (*quoting Grayned v. City of Rockford*, 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed. 2d 222 (1972) ) (emphasis in original).

"The overbreadth doctrine holds that a law is void on its face if it sweeps within its ambit not solely activity that is subject to governmental control, but also includes within its prohibition the practice of a protected constitutional right." *Clark v. City of Los Angeles*, 650 F. 2d 1033 (9th Cir. 1981), *cert. denied*, 456 U.S. 927, 102 S.Ct. 1974, 72 L.Ed. 2d 443 (1982). "The overbreadth doctrine has been applied almost exclusively in the areas of first amendment expressive or associational rights." *Id.* at 1039. Furthermore, "where conduct and not merely speech is involved, . . . the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." *Broadrick v. Oklahoma*, 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed. 2d 830 (1973).

In the present case the stated purpose of the ordinance is "to prevent the use of ostensibly legitimate businesses as blinds for pandering and prostitution" and "to protect minors from involvement with such business practices and also to further public health, safety and welfare." Each of these objectives is clearly within the scope of the police power of the state. However, as noted above, legislation may be overbroad if it impermissibly infringes upon protected rights. One such right is the right of association.

"The Fourteenth Amendment protects from state interference the First Amendment right of citizens to freedom of association." *Thomas S. By Brooks v. Flaherty*, 699 F. Supp. 1178 (W.D.N.C. 1988). "Freedom of association is a fundamental right, implicit in the concept of ordered liberty." *Id.* at 1203. The ordinance at issue in the present case requires escort bureaus to keep a record of transactions with clients or customers. This record book must be kept on the premises and shall be made available for inspection

## TREATS ENTERPRISES, INC. v. ONSLOW COUNTY

[94 N.C. App. 453 (1989)]

to the Sheriff of Onslow County or one of his deputies. Information concerning the customers or clients and the escorts is required to be recorded, including the names and addresses of each party involved in a transaction. We hold that the record requirements of the ordinance constitute an impermissible infringement on the right of association of the customers, clients and patrons of an escort bureau. "A state violates the fourteenth amendment when it seeks to interfere with the social relationship of two or more people." *Wilson v. Taylor*, 733 F. 2d 1539 (11th Cir. 1984). The ordinance patently interferes with the social relationships.

The ordinance acts to impose the tangible presence of the State in the social affairs of its citizens each time a citizen wishes to utilize the services of an escort. This type of governmental presence is the type of interference expressly prohibited by the First Amendment guarantee of right of association. As the court stated in *Thomas S. By Brooks, supra*, "[e]ven an indirect infringement on associational rights is impermissible and subject to the closest scrutiny." Though the ordinance is intended to directly affect and regulate the escort bureaus, it has the indirect effect of infringing on the associational rights of customers, clients or patrons. Therefore, the ordinance interferes with the social relationship of two or more people and is subject to the closest or strictest scrutiny.

"It is beyond debate that freedom to engage in association for the advancement of beliefs and ideas is an inseparable aspect of the 'liberty' assured by the Due Process Clause of the Fourteenth Amendment. . . ." *N.A.A.C.P. v. Alabama*, 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed. 2d 1488 (1958). Subsequent decisions have established that "[t]he constitutional guarantee not only protects an individual's associations with others for the purpose of advancing shared political and religious beliefs, but encompasses the right simply to meet with others and applies to social and personal associations." *Thomas S. By Brooks, supra* at 1203. "[O]nly a compelling state interest in the regulation of a subject within the State's constitutional power to regulate can justify limiting First Amendment freedoms." *N.A.A.C.P. v. Button*, 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed. 2d 405 (1963). The State must also "[employ] means closely drawn to avoid unnecessary abridgment of associational freedoms" in achieving its objectives. *Buckley v. Valeo*, 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed. 2d 659 (1976). In the present case the county has established that it has a compelling interest in preventing the use of escorts for

pandering and prostitution, the protection of minors and the furtherance of public health, safety and welfare. The county has failed to show, however, that the means employed are drawn so as not to infringe on the associational freedoms of persons who may seek the services of one escort.

> [E]ven though the governmental purpose be legitimate and substantial, that purpose cannot be pursued by means that broadly stifle fundamental personal liberties when the end can be more narrowly achieved. The breadth of legislative abridgment must be viewed in the light of less drastic means for achieving the same basic purpose.

*Shelton v. Tucker*, 364 U.S. 479, 81 S.Ct. 247, 5 L.Ed. 2d 231 (1960). We hold that the county's objectives can be pursued by less drastic means than the ordinance at issue. The preamble to the ordinance indicates that other law enforcement methods, such as undercover officers, have been used to police adult entertainment businesses such as escort bureaus. These methods, including police surveillance, informants and other traditional methods of law enforcement would be less intrusive on the rights of association of the escort bureaus' customers than the recordkeeping provisions of the ordinance. Though we note that the ordinance states that use of undercover officers has not always been successful in preventing these criminal offenses, lack of success does not serve as an excuse for an infringement on First Amendment rights of association.

> A plausible challenge to a law as *void for overbreadth* can be made only when (1) the protected activity is a significant part of the law's target, and (2) there exists no satisfactory way of severing the law's constitutional from its unconstitutional applications so as to excise the latter clearly in a single step from the law's reach.

L. Tribe, *American Constitutional Law* § 12-27 (2d ed. 1988) (emphasis in original). The ordinance states in the preamble: "Accomplishing the objectives of this ordinance can only be effectively achieved through the records requirement." The ordinance's target is "all such adult-entertainment businesses which offer that sort of companionship involved with socializing and amusement." The protected activity in the present case—the rights of association of the escort bureau's customers—is a significant part of the target of the ordinance. The type of companionship involved with socializing and amusement mentioned in the ordinance is nonexistent without

the participation of the customers who must exercise their rights of association to engage in this activity. We can perceive no satisfactory way to excise the unconstitutional application of the ordinance's records requirement while still effectively achieving the ordinance's stated constitutional objectives. If the records requirement is removed the ordinance will be made, by its own implicit admission, ineffectual. The unconstitutional effect of the ordinance is not only real but is substantial when judged against the ambit of its legitimate application. Therefore, we hold that the ordinance at issue in the present case is unconstitutional as written, being void for overbreadth.

[2]  We also hold the ordinance to be void for vagueness. As noted above, an ordinance is violative of the due process of law when it forbids or requires the doing of an act in terms which are so vague that men of ordinary intelligence must necessarily guess at its meaning and differ as to its application. The ordinance in the present case presents this problem.

The term "escort" is defined as "[a]ny person who, for hire or reward, accompanies others to or about social affairs, entertainment or places of amusement," or "[a]ny person who, for hire or reward, consorts with others for purposes of socializing and/or amusement and/or entertainment about any place of public resort or within any private quarters." Though the term "escort" is susceptible to the apparent intended meaning of the ordinance, the term is also susceptible to other connotations. Our Supreme Court has stated that the term "escort" "connotes a companion for purposes of socializing and amusement . . . ." *Treants Enterprises, Inc. v. Onslow County*, 320 N.C. 776, 360 S.E. 2d 783 (1987). In modern society the term "escort" as defined by the ordinance could include, for example, dance instructors, golf and tennis professionals, personal or social secretaries, and chauffeurs. The wording of the Onslow County ordinance "provide[s] only a vague, uncertain and unintelligible notion of [its] scope, at which persons of common intelligence must necessarily guess." *Eaves v. Board of Clark Co. Comm'rs*, 96 Nev. 921, 620 P. 2d 1248 (1980). "The imprecision in the language of the ordinance permits, and is likely to encourage, arbitrary and discriminatory enforcement." *Id.* at 924, 620 P. 2d at 1250. The *Eaves* court in construing a substantially similar ordinance to the one in the present case stated:

The mere existence of Ordinance No. 595, as written, is likely to deter law-abiding citizens from conduct which may

or may not be covered by its provisions. As written, Ordinance No. 595 fails to provide law enforcement officials with adequate guidance concerning the precise scope of the activities it aspires to proscribe. Consequently, Ordinance No. 595 is void for vagueness on its face.

*Id.* at 924-925, 620 P. 2d at 1250. The ordinance at issue in the present case presents the same problems. The imprecision and ambiguity of the wording of the Onslow County ordinance causes the ordinance to be void for vagueness on its face.

[3] We next turn our attention to plaintiff's argument concerning the validity of the ordinance under Article I, Section 19 of the North Carolina Constitution. Article I, Section 19, provides in part, the following: "No person shall be taken, imprisoned, or disseized of his freehold, liberties, or privileges, or outlawed or exiled, or in any manner deprived of his life, liberty, or property, but by the law of the land." N.C. Const. art. I, § 19. We note that the predecessor to the ordinance at issue in the present case was previously found to be invalid under this section by this Court in *Treants Enterprises, Inc. v. Onslow County*, 83 N.C. App. 345, 350 S.E. 2d 365 (1986), and the North Carolina Supreme Court, *Treants, supra*. The two ordinances are substantially the same with the exception of the substitution of the words "escort bureau" for "a business providing male or female companionship" and "escort" for "employee (whose duties involve the conducting of said business)." This Court held that the prior ordinance was overbroad and vague stating that "the ordinance lacks any rational, real and substantial relation to any valid objective of Onslow County and . . . it thus offends Article 1, Secs. 1 and 19 of the Constitution of North Carolina." *Treants*, 83 N.C. App. at 357, 350 S.E. 2d at 373. Our Supreme Court affirmed this decision holding that the prior Onslow County ordinance, "by reason of its overbreadth, . . . is not rationally related to a substantial government purpose and violates our state constitution." *Treants*, 320 N.C. at 780, 360 S.E. 2d at 786. In its opinion the Supreme Court stated that "[t]he terms 'escort bureau' and 'escort service' are often regarded as euphemisms for prostitution. . . ." *Id.* The substitution of the words "escort" and "escort bureau" in the ordinance in the present case appears to be an attempt by the county to correct the problems posed by the earlier version of the ordinance.

"Our Supreme Court has held that the term 'law of the land,' as used in Article I, Section 19 of the North Carolina Constitution,

is synonymous with 'due process of law' as that term is applied under the Fourteenth Amendment to the United States Constitution." *In re Petition of Kermit Smith*, 82 N.C. App. 107, 345 S.E. 2d 423 (1986). "For a statute to be within the limits set by the federal due process clause and the North Carolina 'law of the land' provision, all that is required is that the statute serve a legitimate purpose of state government and be rationally related to the achievement of that purpose." *Shipman v. N.C. Private Protective Services Bd.*, 82 N.C. App. 441, 346 S.E. 2d 295, *disc. rev. denied and appeal dismissed*, 318 N.C. 509, 349 S.E. 2d 866 (1986). "The inquiry is thus two-fold: (1) Does the regulation have a legitimate objective? and (2) If so, are the means chosen to implement that objective reasonable?" *Treants, supra* at 352, 350 S.E. 2d at 370.

The county, as discussed above, has established that it has a legitimate objective in promulgating the ordinance in the present case. The prevention of the use of ostensibly legitimate businesses as blinds for prostitution, the protection of minors from involvement with such businesses and the furtherance of public health, safety and welfare are valid and legitimate governmental objectives. However, the means chosen by the county in the present case to implement these objectives are not reasonable in light of their effect on rights of association between the public at large and escorts. Though the use of the term "escort bureau" in the present ordinance may serve to narrow the scope of the ordinance's application and effect, thereby avoiding the overbreadth problem posed by its predecessor, the sweep of the present ordinance infringes on rights of association guaranteed by the First Amendment. Therefore, the ordinance is patently unreasonable and violative of Article I, Section 19 of the North Carolina Constitution.

For the foregoing reasons, we hold that the Onslow County ordinance is void as it violates the First and Fourteenth Amendments to the United States Constitution and Article I, Section 19 of the North Carolina Constitution.

As a result of our decision above, it is unnecessary for us to address plaintiff's other assignments of error.

Reversed.

Chief Judge HEDRICK and Judge ARNOLD concur.